and we can proceed right away with 21-2659. Good morning. Good morning. Mr. Bogolsky. Yes. Frank Bogolsky appearing for the appellant Robert Chapline. Okay. And you've reserved two minutes for rebuttal. You may proceed. Thank you. What we're asking for in this appeal is quite simple, and that is a trial for Robert Chapline. He was given a 30-year sentence in this case after he had taken a plea. And after he took the plea, he decided that he would like to request a withdrawal of the plea. I was appointed as his counsel in Buffalo, New York. And the basis for his withdrawal is he had previously suffered a stroke in 2017, which did damage his brain. He was hospitalized. And at the time of his plea, he was taking a variety of medicines that could impact his ability to understand what was going on. It's obviously discretionary for the trial court as to whether or not they're going to allow someone to withdraw a plea bargain. But in this case, given the gravity of the charges and what Mr. Chapline was facing, I think all of us in the system that we practice law in would be more comfortable if someone's getting a life sentence, which is, and I say a life sentence, 30 years, 360 months, based on my client's age at the time he was sentenced of approximately 60 years. Now without a trial, I don't feel comfortable putting someone in jail. I mean, I don't, I'm not the sentencing judge, but I think this court should look very, very carefully at that. So, Counselor, I think what I hear you suggesting is that in some aspect of the analysis of the withdrawal of guilty plea, which, as you know, is quite a high standard to meet, that we should calculate in, in some way, the length of the sentence, the seriousness of the charges. What's your authority in support of that proposition? Pardon me? What is your authority in support of that proposition? Well, I mean, it's, I think there's a substantial right that, that the case law talks about is if, does, does the, does the action of the court affect the substantial right? And I think in this case, it's about as substantial as you can, as you can get. Now he did timely file an application, meaning it's still discretionary, but it was before he was sentenced. And what I consider, and having handled this case myself before Judge Geraci, who I have a tremendous amount of respect for, who, who practiced both defense and prosecution, he's a very good judge, is that he had scheduled sentencing the same day that we, he was to entertain my motion to vacate this plea. But Counsel, wasn't that a few months after this issue had been raised? So it wasn't as though that September hearing where he conducted the sentencing was the first time this issue had been addressed. You're correct, yes. It was, it was, there was plenty of time, I mean, for the court to look at it. And I'm not suggesting that, you know, they've glossed over it, but there was ample time. But from my perspective, though, we, we should give a careful look at this because here's a person who did suffer a stroke. Here's an individual who's on a variety of medicines. And I recall it was May 21st, 2021. And I had suggested perhaps an evaluation of Mr. Chapline. And the court had basically indicated that they weren't going to, didn't want to go there with that. Now, I'm not suggesting necessarily that he was incompetent, but if it affects his substantial right and his decision-making ability at that time as to whether or not this was a voluntary plea, I think the court, you know, could have certainly allowed for the appointment of an expert or an evaluation to determine what, what his level of understanding was. And there's also undisputed that he had, in court, he would be wearing a headset and had complained about, about hearing loss and so forth. And when I, when I represented Mr. Chapline, he also had some issues, you know, hearing in court, and they had accommodated that with, with the headset. So there's a lot of issues here. Well, but that's, I think you're raising as a, as a distinct point about the lack of knowing and voluntariness of the plea. And so I suppose just looking carefully at that transcript, you've got the district judge who provides a hearing headset, asks a series of questions about the ability to hear, says, I think says, let me know if you can't. And then the proceeding commences in at least reading the transcript. The defendant's responsive to every question asked. There's nothing on this transcript, I don't think, on this record to indicate that Mr. Chapline's hearing issues affected his ability to hear and understand this proceeding. What, what would we look, what would we look to to conclude otherwise? Well, I would, I would agree when you look at the transcript, I mean, there's nothing that, that jumps out, like there's not, sometimes clients will, you know, you walk out of the courtroom for a period of time. That did not happen based on the way that I read the transcript. But we're assuming that at the time, and I wasn't his lawyer, that he's operating with a full deck or with a full set of faculties. Because you can ask anyone questions during any proceeding, and you can elicit answers. And, and they could be the appropriate answers, but it doesn't mean that they have, you know, cognitive ability to understand all the ramifications of that. And that's why when, one of the things I had suggested on the 21st of, of May in 2021 was, maybe let's get a doctor to examine him and say, hey, look, you know, I mean obviously it would be a historical examination, because the examination wouldn't have been contemporaneous with, with the plea colloquy. But there could be some historical analysis of medical records to look at the medicines that I listed in my brief that he was taking and in my motion papers to see, you know, could this have affected his ability to engage in a knowing voluntary intelligent waiver of a right, right to a trial. And, you know, the court didn't, didn't allow that, didn't, didn't do that. And I think, you know, to your, your point though, the transcript is pretty clean. But we're assuming that the person understands everything that's being asked of them based on, on some simple words. So I just want to make sure I understand, so you requested the appointment, you made a formal request for the appointment of an expert that was denied? I did not make a, well, I wouldn't call it a formal request because I didn't put it in writing. But it's page six of the transcript of May 21st, 2021. And I asked Judge Geraci, and I, and I did it in a very respectful way that, you know, maybe we could get an expert appointed to look at these things. And I don't want to quote exactly, but basically he said he didn't want to go there or didn't want to do that. And I'm very clear in the transcript. I'm saying I'm not suggesting he's incompetent, but there's a difference between, as you know, legal competency and whether or not someone is able to take a plea at, at that time. And I did, I did raise that, and it was a virtual court appearance. And, and I do remember it, and I was reading the transcripts over before here today. And at that point, the court could have said, hey, look, let's, let's be sure, and let's get a doctor to examine Mr. Chaplin and see, or examine the medical records and see what his faculties were at that time. And that, the judge did not want, want to do that. So, we, I, I thank you for, for, for your time and the ability to argue this on behalf of Mr. Chaplin. I hope that you would give him a chance to have, have a trial and have his case litigated before a jury of his peers. All right. Thank you. Judge Sack, anything before council sits down? No, thank you very much. Thank you, Mr. Bogolsky. Thank you, Your Honor. We'll hear from Ms. Lee. Good morning, Your Honors. May it please the court, my name is Tiffany Lee, and I represent the United States. The sole issue here before this court is whether or not the district court judge abused its discretion when it denied Mr. Chaplin's motion to withdraw his guilty plea. As this court has recognized, this, the bar is high because the whole idea is we don't want defendants to enter into a guilty plea, have a change of heart, and really reduce the solemn process of deciding to enter a guilty plea going through a plea colloquy and then having a change of heart just because of the sentencing that the particular defendant might be exposed to. Here the record is clear that Mr. Chaplin fully entered into a knowing and voluntary plea. And as for his belated contentions that he had medical issues, they were before the record. The district court judge asked Mr. Chaplin, are you taking any medications? And he indicated, I'm taking some medications for seizures. The district court then proceeded to ask, is that affecting your ability to understand what's going on today? And Mr. Chaplin first said, it shouldn't be, no. And then the district court clarified and said, no. Like, is it, the specific question the district court followed up was, well, do they in any way? And Mr. Chaplin responded, no. Then the next question was, do you have any health or medical condition affecting your ability to understand these proceedings? And Mr. Chaplin responded, no. Based on this record, there was no, Mr. Chaplin failed his burden, which he must demonstrate in terms of having his guilty plea vacated and withdrawn. Which is to present a fair and just reason. And to also present a significant question as to the voluntariness of this plea. Your honors, on this record, we just don't have any of those facts. The district court made the clear determination that, based on the plea allocution, on Mr. Chaplin's responses to all the questions, the rule 11 questions he asked, and also based on Mr. Chaplin's own description as to what he did as a factual basis for the offense. That based on all these circumstances, there was just no basis to grant Mr. Chaplin's motion to withdraw his guilty plea. Unless the court has any further questions, the government rests on its brief. Judge Sack, anything for Ms. Lee? No, thank you very much. Thank you, counsel. Thank you. Mr. Bogulski, you have two minutes for rebuttal. I don't have anything further to add than what was already discussed at this time. Thank you. All right. Thank you, counsel. Thank you. The matter is submitted. And next we'll hear 22-638. Good morning, Mr. Hodling. How do you say your name, sir? Hotelling. Hotelling. Good morning, Judge Nagle.     Thank you. Thank you. Thank you. Thank you. Thank you. Please come to the podium. You've reserved two minutes for rebuttal. Yes, ma'am. You may proceed. This case is extraordinary, tragic. It's over 12 years old. What's happened here is the defense team has basically been non-existent in this case for completely four years right from the outset. Look at docket number 69. They'll say very clearly that.